UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WEBMD LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>EVERYDAY HEALTH MEDIA LLC.<br><br>    Defendant. | Civil Action No. 1:14-cv-04446-LTS |

## INITIAL CONFERENCE REPORT

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the Local Rules of Civil Procedure for the Southern District of New York, and the Court's Standing Order M10-468 (Dkt. No. 3), Plaintiff WebMD LLC ("WebMD") and Defendant Everyday Health Media LLC ("Everyday Health") submit this Joint Rule 26(f) Report. The parties met and conferred to discuss the issues outlined in this report on August 27, 2014.

**I.    CONCISE STATEMENT OF NATURE OF THE ACTION**

    **A.    WebMD's Synopsis of its Allegations**

        **1.    Nature and Bases of WebMD's Claims**

Plaintiff WebMD brings this action, asserting trademark infringement, false advertising and unfair competition, and trademark dilution under the Lanham Act, as well as other federal and state law claims, as the result of Defendant Everyday Health's repeated and overt misuse of WebMD's famous trademarks.

WebMD provides health information to consumers, physicians, healthcare professionals, employers and health plans through its public and private online portals, mobile platforms and health-focused publications. Two of WebMD's trademarks are at issue in this case—WebMD®

(United States Trademark Registration Nos. 2,349,285 and 2,394,818) and MEDSCAPE® (United States Trademark Registration No. 1,978,357).  Under the WebMD® mark, WebMD offers consumers a large range of trustworthy and credible health information through a variety of channels, including its www.webmd.com site.  The information provided includes the WebMD Symptom Checker, WebMD News Center, and WebMD Health Guides, to name a few.  Under the MEDSCAPE® mark, WebMD offers customized content for physicians and other healthcare professionals on its www.medscape.com site, including disease and condition articles, drug reference database, drug interaction checker and more.  WebMD goes to great lengths to ensure the accuracy and completeness of the information it provides to consumers.  This commitment to quality—in addition to WebMD's extensive promotion of its trademarks WebMD® and MEDSCAPE® and WebMD's continuous and exclusive use of those marks—are the reason for WebMD's reputation as the #1 Trusted & Recommended brand in the United States and the millions of visitors to its sites.

WebMD alleges that Everyday Health has misused WebMD's famous and distinctive WebMD® and MEDSCAPE® marks in an apparent attempt to deceive customers about the source of health information on Everyday Health's website, mislead advertisers about traffic to Everyday Health's website and the value of Everyday Health's brand, and capitalize off the WebMD brands without authorization.  Everyday Health has no relationship to WebMD, no license from WebMD, and the source of Everyday Health's health information is not WebMD.  Nonetheless, Everyday Health has used the WebMD® and MEDSCAPE® marks:

- In the headline and URL of its online advertisements, plainly suggesting that clicking on the advertisement will take the user to the famous and highly trusted WebMD website or a website sponsored or authorized by WebMD.  Instead, however, if the user clicks on the advertisement, he/she is diverted to Everyday Health's website.

- On its webpage—specifically in the heading and the search box on the landing pages for the online advertisements referenced above—suggesting (incorrectly) that WebMD is somehow connected to Everyday Health.

Everyday Health's misuse of WebMD's marks extends across the most popular search engines, including Google, Yahoo!, AOL, and Ask.com.

WebMD alleges that Everyday Health's misconduct has caused economic and reputational harm to WebMD in two key ways. First, Everyday Health's misleading advertisements and webpages divert consumers and advertisers away from WebMD's sites, causing WebMD to lose visitor traffic and advertising revenue from some of the most well-known pharmaceutical and consumer brands in the world, such as Bayer HealthCare Pharmaceuticals, Abbott Laboratories, and Acorda Therapeutic. On information and belief, these advertisers pay Everyday Health for the display of their advertisements on an Everyday Health webpage. Thus, Everyday Health financially benefits each time Everyday Health improperly diverts a WebMD consumer to the Everyday Health webpage. Second, because the quality of Everyday Health's website is poor and fails to meet the standards for WebMD's own content, its misuse of the WebMD® and MEDSCAPE® marks dilutes the WebMD brand.

    2.    **Relief Requested**

WebMD has been damaged by Defendant's trademark infringement, unfair competition, dilution of WebMD's trademarks, false advertising, and deceptive acts and practices. WebMD seeks injunctive relief and damages to prevent Everyday Health from continuing to misappropriate WebMD's intellectual property, and to prevent consumers of health information services from being further confused, deceived, and potentially harmed by Everyday Health's infringing conduct. Specifically, WebMD seeks:

- A permanent injunction against Everyday Health and its affiliates from further infringing WebMD's trademarks and from using any other trademark that is a colorable imitation of

WebMD's marks or is likely to be confused with the WebMD® and MEDSCAPE® marks.

- Actual damages sustained by WebMD as a result of Everyday Health's infringement or a disgorgement Everyday Health's profits from such infringement (or other appropriate damages).

- Treble damages in light of Everyday Health's willful infringement.

- Costs and reasonable attorneys' fees.

- WebMD interest on any past damages.

### B. Everyday Health's Synopsis of its Defenses

Defendant Everyday Health denies all allegations of wrongdoing in this action. Everyday Health believes the complaint is without merit for numerous reasons, including but not limited to the following:

- Everyday Health has not infringed or diluted any valid and enforceable trademark right, if any, owned by WebMD.

- There is no likelihood of confusion as to the source or sponsorship of the products or services sold by the respective parties.

- WebMD's claims are barred, in whole or in part, by the applicable statute of limitations.

- WebMD's claims are barred, in whole or in part, by the doctrines of waiver, estoppel and/or laches.

- WebMD's claims are barred, in whole or in part, because WebMD has not suffered any legally cognizable injury or damage, and any alleged damage is remote, uncertain, speculative, and without basis in law or in fact.

- WebMD's request for injunctive relief should be denied as moot, vague, and overly broad.

### C. Pending Related Actions

There are no pending related criminal or civil actions.

4

**II.     JURISDICTION – Initial Conference Order (Dkt. No. 3) 5.c**

This Court has subject matter jurisdiction over this case because WebMD's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  Subject matter jurisdiction is conferred by 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(b) (unfair competition), and 15 U.S.C. § 1121 (Lanham Act).  WebMD contends that this Court has supplemental jurisdiction over WebMD's state law claims pursuant to 28 U.S.C. § 1367.

This Court has personal jurisdiction over Everyday Health because Everyday Health is a citizen of the State of New York.

**III.    CASE SCHEDULE – Fed. R. Civ. P. 26(F)(3)(B) and Exh. A, No. 8**

The parties' proposed case schedule is attached hereto as **Exhibit 1**.

**IV.     PRELIMINARY ISSUES – Exh. A, No. 5**

At this time, the parties are not aware of any preliminary issues that are likely to arise that will require court intervention.

**V.      DISCOVERY – Fed. R. Civ. P. 26(f)(3)**

   **A.   Subjects of Discovery – Fed. R. Civ. P. 26(f)(3)(B)**

The parties anticipate that they will require discovery on all claims and defenses asserted in this matter.  Each party reserves the right to object to the discovery identified in this section.

   **1.   WebMD's Intended Subjects of Discovery**

WebMD intends to take discovery relating to the following issues:

- Consumer confusion with respect to Everyday Health's products and services and Everyday Health's use of the WebMD® and MEDSCAPE® marks;

- Customers, competitors, and/or the market for the parties' products and services;

- The quality of the parties' products and services;

- Reputation and awareness of WebMD and WebMD's marks, WebMD® and MEDSCAPE®;

5

- Everyday Health's use of the WebMD® and MEDSCAPE® trademarks in advertising or otherwise;

- Everyday Health's decision to use the WebMD® and MEDSCAPE® marks, including but not limited to their use in Everyday Health's online advertisements.

- Revenues and profits Everyday Health has made as a result of its use of the WebMD® and MEDSCAPE® marks.

- Damages WebMD has incurred as a result of Everyday Health's infringement.

WebMD is the exclusive owner of information relating to the remaining secondary meaning, trademark confusion, and dilution factors: the registration of the WebMD® and MEDSCAPE® marks; licensing and exclusive use of the WebMD® and MEDSCAPE® marks; the strength of the WebMD® and MEDSCAPE® marks; the area and manner of use of the WebMD® and MEDSCAPE® marks; the products and services associated with the WebMD® and MEDSCAPE® marks; and the harm to the WebMD® and MEDSCAPE® marks likely caused or to be caused by Everyday Health's use of the marks.

### 2. Everyday Health's Intended Subjects of Discovery

Everyday Health intends to take discovery relating to, among other things, the following issues:

- The allegations in WebMD's Complaint;

- Any consumer confusion between Everyday Health's products and services and WebMD's products and services;

- Evidence of consumers' perceptions relating to the allegations in the Complaint;

- Evidence of health professionals' perceptions relating to the allegations in the Complaint;

- Evidence of confusion, mistake or deception as to the source, origin or sponsorship of WebMD's products and services, as alleged in the Complaint;

- Licensing and use of the WebMD and MEDSCAPE marks;

- Economic, reputational or any other damages alleged by WebMD in this action;

- WebMD's communications regarding the use of any of its marks in connection with keyword advertising;

- WebMD's use of any of Everyday Health's marks in connection with keyword advertising;

- WebMD's use of any third party's marks in connection with keyword advertising;

- Third Parties' use of WebMD's marks in connections with keyword advertising;

- Information relating to visits to any website operated by WebMD;

- WebMD's search engine optimization practices;

- WebMD's knowledge of Everyday Health's alleged use of WebMD's marks;

- WebMD's revenues and profits derived from use of the WebMD and MEDSCAPE marks.

B. **Initial Disclosures Under Rule 26(a) – Fed. R. Civ. P. 26(F)(3)(A) and Exh. A, No. 2.**

The parties do not propose any changes to the form or requirements for disclosures under Rule 26(a) and the Local Civil Rules of the Southern District of New York.  The parties agree to exchange initial disclosures on September 22, 2014.  The parties are not aware of any readily identifiable documents or category of documents that should be produced immediately in lieu of initial disclosures.

C. **Resolution of Discovery Issues – Exh. A, No. 6**

At this time, the parties are not aware of any discovery disputes that are likely to arise. Should a discovery dispute arise, the parties shall attempt to resolve it informally through telephonic discussion between counsel before seeking Court intervention in accordance with Standing Order M10-468 and the Court's Individual Practices.

    **D.**    **Limitations on Types of Discovery – Exh. A, No. 7(a)**

The types of discovery permitted in this case shall be in accordance with the Federal Rules.

    **E.**    **Limitations on Discovery – Fed. R. Civ. P. 26(F)(3)(E) and Exh. A, No. 7(b)**

        **1.**    **Interrogatories**

The parties do not propose any modification to the limit on interrogatories set forth in the Federal Rules of Civil Procedure and Local Civil Rule 33.3.

        **2.**    **Document Requests**

The parties do not propose any modification to the Federal Rules of Civil Procedure or any applicable Local Civil Rule.

        **3.**    **Requests for Admission**

The parties do not propose any modification to the limit on requests for admission (50 per party) set forth in the Federal Rules of Civil Procedure and Standing Order M10-468 or any applicable Local Civil Rule.

        **4.**    **Depositions**

The parties do not propose any modification to the limit on depositions—ten (10) depositions per party with each deposition running seven (7) hours each—set forth in the Federal Rules of Civil Procedure or any applicable Local Civil Rule.  The parties agree that each 30(b)(6) deposition notice counts as one (1) deposition, regardless of the number of individuals deposed.  The parties will meet and confer in an attempt to reach an agreement on the time allotment for any 30(b)(6) deposition.  If the parties cannot agree, the party seeking a longer time allotment may seek leave from the Court for a longer time allotment.

### 5.     Form of Discovery Requests and Responses

The parties agree that emailing discovery requests or responses to the opposing party's counsel constitutes effective service and notice of such requests and responses as of the date and time of receipt of the email by opposing counsel.  The parties agree to email copies of discovery requests in Microsoft Word format in addition to PDF format.

### 6.     Modifying These Limitations

In the event either party discovers a need for more extensive discovery, the parties will meet and confer in an attempt to reach an agreement allowing some further discovery.  If the parties cannot agree, the party seeking further discovery may seek leave from the Court to propound further requests.

## F.  Limitations on Timing and Sequence of Discovery – Fed. R. Civ. P. 26(F)(3)(A) and Exh. A, No. 7(c)

The parties do not propose any modification to the timing and sequence of discovery set forth in the Federal Rules of Civil Procedure.

## G.  Electronically Stored Information ("ESI")

### 1.     Production of ESI – Fed. R. Civ. P. 26(F)(3)(C)

Disclosure or production of ESI will include data that is accessible to the parties in the ordinary course of business.  The parties agree that the party producing the ESI shall be given the opportunity to review the data prior to production for the purpose of identifying privileged information for which a detailed privilege log will be provided to the requesting party— according to Standing Order M10-468 and the Local Rules for the Southern District of New York—along with the produced ESI.  A Joint Electronic Discovery Submission and Proposed Order is attached hereto as **Exhibit 2**.

All documents will be produced as black and white single-page .TIFF images, including OCR of text to the extent possible, along with load files.  Excel spreadsheets will be additionally produced as native files.  The parties reserve the right to request production of native versions for individual documents upon the articulation of a good faith basis for such production.

The parties are conferring regarding the production of metadata and the discoverability of ESI only available from backup systems or other means of archival storage of ESI.

### 2. Preservation / Restoration of ESI – Exh. A, No. 1 & 7(d)

The parties agree that the restoration of data maintained solely for backup purposes and data maintained solely for disaster recovery purposes is overly burdensome and need not be preserved or produced.

### H. Agreement to Allow Deposition of Trial Witnesses Named if Not Already Deposed – Exh. A, No. 7(e)

The parties will allow depositions of trial witnesses, if any, who are named on the trial witness list but who were not previously disclosed, and therefore have not been deposed.  Such witnesses shall be produced reasonably in advance of trial.

### I. Preservation Depositions – Exh. A, No. 7(f)

The parties do not anticipate any preservation depositions at this time.  The parties agree to meet and confer regarding this issue if the need arises.

### J. Foreign Discovery and Issues Anticipated – Exh. A, No. 7(g)

At this time, the parties do not anticipate any foreign discovery.  The parties agree to meet and confer regarding this issue if the need arises.

### K. Privileged Information – Fed. R. Civ. P. 26(F)(3)(D)

The parties agree that any party that withholds privileged documents or other information will provide a log, according to Standing Order M10-468 and the Local Rules for the Southern

District of New York, identifying such documents or information and providing information sufficient to allow the opposing party to assess the basis for the assertion of privilege.  The parties agree that privilege logs do not need to be exchanged on the same date that discovery responses are due and will work together to agree on dates for the exchange of privilege logs.  The parties agree to meet and confer regarding any disputed assertions of privilege before resorting to motion practice.

The parties agree that privilege logs need to disclose only those privileged documents and other information dated on or before June 19, 2014, the date the complaint was filed.  The parties agree not to seek discovery of or a schedule of privileged documents or other information dated after that date except on a showing of good cause as to particular documents or other information.

### L. Possibility of a Stay or Limitation of Discovery Pending Dispositive Motion – Exh. A, No. 3

At this time, the parties do not believe that the filing of any dispositive motion in this case will require a stay or limitation of discovery.

## VI. CONFIDENTIALITY AGREEMENT AND PROTECTIVE ORDER – Fed. R. Civ. P. 26(F)(3)(F)

The parties agree to make a good faith effort to agree on a confidentiality agreement and protective order and to submit the agreed-upon confidentiality agreement and protective order to the Court by October 20, 2014.  If the parties have agreed on the terms of the confidentiality agreement and protective order, the proposed confidentiality agreement and protective order will so state.  If the parties have not agreed on the terms, the proposed confidentiality agreement and protective order will state each party's positions.

## VII. MAGISTRATE

### A. Possibility of Communication / Coordination Between Magistrate Judge and District Judge re Pretrial Matters – Exh. A, No. 4

The parties agree to an assignment to Magistrate Judge Netburn for General Pretrial purposes, in accordance with Standing Order M10-468, Section II.I and Exhibit C.

### B. Possibility of Consent to Trial Before a Magistrate Judge – Exh. A, No. 13

The parties do not consent to trial before a Magistrate Judge.

## VIII. PLEADINGS

### A. Pleadings, including sufficiency and amendments, and the likelihood of timing of amendments – Exh. A, No. 14

The parties shall be permitted to amend the pleadings as a matter of course until November 17, 2014. Subsequently, the parties shall be permitted to amend the pleadings upon a showing of good cause.

### B. Joinder of additional parties, and the likelihood and timing of joinder of additional parties – Exh. A, No. 15

The parties do not expect this provision to be applicable in this case. To the extent joinder of additional parties is necessary, the parties shall be permitted to join new parties as a matter of course until November 17, 2014.

## IX. EXPERT WITNESSES – Exh. A, No. 16;

The parties believe that expert witnesses are necessary and will not waive expert depositions. The parties propose that each party be permitted to obtain up to four expert witnesses, with the possibility of retaining additional expert witnesses upon showing of good cause. The parties believe that expert disclosures and discovery should take place after fact discovery and before summary judgment. The parties have included proposed expert discovery deadlines in the proposed case schedule attached hereto as **Exhibit 1**.

X.  **DAMAGES – Exh. A, No. 17**

The parties propose that damages discovery run concurrently with fact discovery.

XI. **FINAL PRETRIAL ORDER – Exh. A, No. 18**

Given the current early stage of this case, the parties are not currently aware of the issues that will be in dispute at the final pretrial conference and thus it is too early to determine whether waiver of the final pretrial order is appropriate.

XII. **SETTLEMENT / ALTERNATIVE DISPUTE RESOLUTION – Standing Order I.A.3 and Exh. A, No. 12**

A.  **WebMD's Position on Settlement**

WebMD has been and remains willing to settle this dispute. It is WebMD's understanding that, since the filing of this lawsuit, Everyday Health has taken down the infringing advertisements and webpages. As a result, WebMD seeks only past damages and future injunctive relief in this litigation.

The parties conferred to discuss settlement options on July 30, 2014. WebMD is also willing to work toward a settlement of this case through a mutually agreed-upon mediator in the event that direct settlement discussions are unproductive.

B.  **Everyday Health's Position on Settlement**

Everyday Health has been and remains willing to settle this dispute. Everyday Health does not believe that any of WebMD's claims have merit or that WebMD has incurred any legally cognizable damages. Everyday Health also believes that WebMD's request for any injunctive relief is without merit and, in any event, should be denied as moot. Nonetheless, Everyday Health is willing to work towards a settlement through direct settlement discussions between and, in the event that such direct discussions are not productive, through a mutually agreed-upon mediator.

XIII.   **TRIAL**

    A.   **Jury Trial**

        1.   **WebMD's Position**

WebMD requests a jury trial and estimates that 4 to 5 days will be needed for trial of all issues.

        2.   **Everyday Health's Position**

To the extent that WebMD is entitled to a jury trial, Everyday Health estimates that 2 to 3 days will be needed for trial.

    B.   **Issues to be Tried – Exh. A, No. 9**

Given the current stage of this case, the parties are not currently aware of all the issues that will ultimately be in dispute and thus it is too early to determine whether and how the issues should be narrowed.  The parties agree that at an appropriate time, they will confer in good faith regarding ways to narrow the issues for trial. Further, at this time, the parties do not believe a mini-trial would be helpful in resolving this dispute.

    C.   **Bifurcation – Exh. A, No. 10**

The parties do not consent to bifurcation of trial.

    D.   **Possible Trial-Ready Date – Exh. A, No. 19**

The parties' proposed case schedule, including a proposed trial-ready date, is attached hereto as **Exhibit 1**.

XIV.   **CLASS CERTIFICATION ISSUES – Exh. A, No. 11**

Class certification is not applicable to this action.

XV.   **COURT LOGISTICS AND MECHANICS – Exh. A, No. 20**

The parties intend to follow the Court's Individual Practices, Standing Order M10-468, and the Local Rules of the Southern District of New York.

XVI. **THE NEED FOR ADDITIONAL MEET AND CONFER SESSIONS RE ISSUES RAISED AT INITIAL CONFERENCE AMONG COUNSEL**

Should any issues arise that were not resolved at the initial pretrial conference, the parties shall meet and confer at a later date.

| COUNSEL FOR PLAINTIFF | COUNSEL FOR DEFENDANT |
|---|---|
| /s/ *Martin Gilmore* | /s/ *Neal Klausner* |
| Martin Gilmore | Neal H. Klausner |
| Wilmer Cutler Pickering Hale and Dorr LLP | Brandie J. Lustbader |
| 7 World Trade Center | Davis & Gilbert LLP |
| 250 Greenwich St. | 1740 Broadway |
| New York, NY 10007 | New York, NY 10019 |
| Tel: (212) 230-8800 | Tel: (212) 468-4800 |
| Fax: (212) 230-8888 | Fax: (212) 468-4888 |
| Email: martin.gilmore@wilmerhale.com | Email: nklausner@dglaw.com |
|  | Email: blustbader@dglaw.com |
| OF COUNSEL: |  |
| Mark Matuschak (*pro hac vice* pending) | *Attorneys for Everyday Health Media, LLC* |
| Vinita Ferrera | Dated: New York, New York |
| Wilmer Cutler Pickering Hale and Dorr LLP | September 11, 2014 |
| 60 State Street |  |
| Boston, Massachusetts 02109 |  |
| Tel: (617) 526-6000 |  |
| Fax: (617) 526-5000 |  |
| *Attorneys for WebMD LLC* |  |
| Dated: New York, New York |  |
| September 11, 2014 |  |