UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 1 9 2014

|  |  |
|---|---|
| WEBMD LLC, | )<br>)<br>) |
| Plaintiff | ) No.: 14-CV-4446 (LTS)<br>) **Joint Electronic Discovery** |
| -against- | ) **Submission No. 1 and**<br>) ~~[Proposed]~~ **Order** |
| EVERYDAY HEALTH MEDIA LLC, | )<br>) |
| Defendant | )<br>)<br>) |

WebMD LLC ("WebMD") and Everyday Health Media LLC ("Everyday Health") have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and [Proposed] Order (and any subsequent ones) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Electronic Discovery Submission No. 1 and [Proposed] Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

(1) **Brief Joint Statement Describing the Action, [e.g., "Putative securities class action pertaining to the restatement of earnings for the period May 1, 2009 to May 30, 2009"]:**

Action alleging trademark infringement, false advertising and unfair competition, and trademark dilution under the Lanham Act, along with other federal and state law claims, pertaining to Defendant Everyday Health's alleged misuse of WebMD's trademarks in advertising on the Internet and otherwise.

(a) **Plaintiff's alleged estimated amount of Plaintiff's Claims:**

```
___   Less than $100,000
___   Between $100,000 and $999,999
___   Between $1,000,000 and $49,999,999
 X    More than $50,000,000
 X    Equitable Relief
___   Other (if so, specify) _____
```

(b) **Estimated amount of Defendant's Counterclaim/Cross-Claims:** Not applicable.

1

(2)  *Competence.* **Counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.**

(3)  *Meet and Confer.* **Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.**

**Dates of parties' meet-and-confer conferences:**  August 27, 2014

(4)  *Unresolved Issues.* **After the meet-and-confer conference(s) taking place on the aforementioned date(s), the following issues remain outstanding and/or require court intervention:** ___ Preservation; ___ Search and Review; ___ Source(s) of Production; ___ Form(s) of Production; ___ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or ___ Other (if so, specify) _____.

*To the extent specific details are needed about one or more issues in dispute, describe briefly below.*

**As set forth below, to date, the parties have addressed the following issues:**

(5)  **Preservation.**

  (a)  **The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.**

   (1)  Both parties represent that they have taken reasonable steps to preserve reasonably accessible electronically stored information ("ESI") relevant to the case. These steps include, but are not limited to, notice to those individuals whose documents the party is under an obligation to preserve.

   (2)  WebMD represents that it utilizes the Microsoft Enterprise Vault system, which automatically preserves all emails. As a public company, WebMD also preserves data as required by law. WebMD continues to investigate preservation methods applicable to other sources of data.

   (3)  Everyday Health utilizes EMC SourceOne and Mimecast to preserve its emails.

(b)  *State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.*

   The parties agree not to disclose the dates, contents or recipients of litigation hold notices.

(c)  **The parties anticipate the need for judicial intervention regarding the following issues concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored information:**

   The parties do not anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving ESI at this time.

(6)  **Search and Review**

   (a)  **The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below.**

   (1)  WebMD will use search terms to locate ESI likely to contain discoverable information. After testing the effectiveness of these search terms, WebMD will disclose the search terms to Everyday Health. Everyday Heath is entitled, within fourteen (14) days of receipt of WebMD's search terms to request a reasonable number of additional search term queries to conduct further electronic discovery, absent a showing of good cause or agreement between WebMD and Everyday Health. WebMD and Everyday Health shall confer in good faith on these additional search terms. In counting these additional search terms, extenders and potential misspellings shall not count toward the total.

   (2)  Everyday Health will use search terms to locate ESI likely to contain discoverable information. After testing the effectiveness of these search terms, Everyday Health will disclose the search terms to WebMD. WebMD is entitled, within fourteen (14) days of receipt of Everyday Health's search terms to request a reasonable number of additional search term queries to conduct further electronic discovery, absent a showing of good cause or agreement between Everyday Health and WebMD. Everyday Health and WebMD shall confer in good faith on these additional search terms. In counting these additional search terms, extenders and potential misspellings shall not count toward the total.

(b) **The parties anticipate the need for judicial intervention regarding the following issues concerning the search and review of electronically stored information:**

The parties do not anticipate the need for judicial intervention concerning the search and review of ESI at this time.

(7) **Production**

(a) *Source(s) of Electronically Stored Information.* **The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:**

(1) WebMD and Everyday Health agree to search for responsive custodial ESI that is accessible to the parties in the ordinary course of business.

a. At this time, WebMD contemplates that such ESI will be found in the email, personal office computers, and shared drives of each identified custodian, to the extent these locations exist for each custodian.

b. At this time, Everyday Health contemplates that such ESI will be found in the email, personal office computers, and shared drives of each identified custodian, to the extent these locations exist for each custodian.

(2) WebMD and Everyday Health are investigating the extent to which relevant data is contained on non-custodial databases. Upon the completion of these investigations, the parties agree to negotiate in good faith regarding an appropriate search process upon completion of these investigations.

(3) The parties agree that the circumstances of this case do not warrant the preservation, review, or production of ESI that is not accessible in the ordinary course of business or not readily preserved because it is unlikely that significant relevant information would be located in those sources that is not otherwise available in reasonably accessible sources. Moreover, the remote possibility of locating relevant information is substantially outweighed by the burden and cost of preservation and/or review and product of ESI from those sources. The parties agree that the following ESI need not be reviewed for product and are not discoverable except upon a showing of good cause:

a. Backup, archival, and legacy data created solely for backup purposes or disaster recovery;

      b.    Voicemail, except for voicemail, if any, that is converted to text and forwarded to the recipient's email account;

      c.    Residual, deleted, fragmented, damaged, or temporary data (e.g., data stored in a computer's RAM) or other data only accessible by forensics;

      d.    Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts;

      e.    Logs of telephone calls;

      f.    Text messages sent from mobile devices (e.g., cell phones and/or personal digital assistants); and

      g.    Electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such data is routinely saved elsewhere.

(b) *Limitations on Production.* **The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:**

    (1)    WebMD and Everyday Health agree to search for ESI in the files of custodians that are reasonably likely to have non-duplicative, non-cumulative discoverable information, without regard to whether any such information may otherwise be withheld on grounds of privilege, work product, or other basis.

    (2)    WebMD and Everyday Health are investigating the identities of custodians that are reasonably likely to have non-duplicative, non-cumulative discoverable information. Upon the completion of these investigations, each party will identify its ESI custodians by name, title, and the general subject matter of the discoverable information in their possession, custody, or control. The parties agree to negotiate in good faith regarding disputes about appropriate ESI custodians.

    (3)    WebMD and Everyday Health agree to produce ESI on a rolling basis.

    (4)    WebMD and Everyday Health agree that there should be no limitations with respect to ESI in the custody or control of non-parties.

    (5)    WebMD and Everyday Health are investigating appropriate limitations with respect to locations and date ranges of ESI. WebMD and Everyday Health agree to negotiate in good faith regarding these topics.

    (6)    Nothing in this Order precludes the parties from subsequently agreeing to otherwise or further limit the scope of ESI.

(c) **Form(s) of Production:**

    (1)    **The parties have reached the following agreements regarding the form(s) of production:**

        a.    All electronic documents will be produced as black and white single-page TIFF images, including OCR of text to the extent possible, along with load files.

        b.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

        c.    The parties are conferring regarding the production of metadata, and will continue to confer in good faith on this topic.

    (2)    *Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):*

The parties agree that, in addition to the form of production described above, Excel spreadsheets will be additionally produced as native files. Furthermore, the parties reserve the right to request production of native versions for individual documents upon the articulation of a good-faith basis for such production, and agree to address any such request in good faith.

    (3)    **The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:**

The parties do not anticipate the need for judicial intervention concerning the form of production of ESI at this time.

(d)    Privileged Material.

    (1)    *Identification.* **The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:**

6

  a. The parties agree that the party producing the ESI shall be given the opportunity to review the ESI prior to production for the purpose of identifying privileged information for which a detailed privilege log will be provided to the requesting party—according to Standing Order M10-468 and the Local Rules for the Southern District of New York—along with the produced ESI.

  b. The remainder of the parties' agreement to date with respect to this topic is memorialized in Section V.K of the Parties' Initial Conference Report, dated September 11, 2014.

(2) *Inadvertent Production / Claw-Back Agreements.* **Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.):**

The parties have agreed in principle that a protective order addressing clawback provisions and a F.R.E. 502(d) order are appropriate in this case. The parties are negotiating in good faith regarding the terms of such orders in the context of a larger protective order.

(3) **The parties have discussed a 502(d) Order.  Yes _X_ ; No ___**

**The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.**

(e) *Cost of Production.* **The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information.  The factors and components underlying these costs are estimated as follows:**

(1) *Costs:*

*Plaintiff:* WebMD continues to analyze its potential costs associated with production of ESI as it investigates custodian, source, date, and location limitations. It will provide an estimate of these costs upon completion of this analysis.

*Defendant:* Everyday Health continues to analyze its potential costs associated with production of ESI as it investigates custodian, source, date, and location limitations.

(2) *Cost Allocation.* **The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:**

The parties do not believe that cost-shifting or cost-sharing agreements are appropriate at this time.

7

  (3) *Cost Savings.* **The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:**

    The parties do not believe cost-saving measures such as shared discovery vendors or document repositories are appropriate at this time.

 (f) **The parties anticipate the need for judicial intervention regarding the following issues concerning the production of electronically stored information:**

    The parties do not anticipate the need for judicial intervention concerning the production of ESI at this time.

(8) **Other Issues:**

  The parties have no further issues to bring before the Court regarding electronic discovery at this time.

**The preceding constitutes the agreement(s) reached, and disputes existing (if any), between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.**

**Party:** WebMD LLC            By: _/s/ [signature]_

**Party:** Everyday Health Media LLC       By: _/s/ Neal Klausner_

**The next scheduled meet-and-confer conference to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place** ~~on~~ in 45 days.

**The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for** _____. **Additional conferences, or written status reports, shall be set every 3 to 4 weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by telephone call 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.**

___ **Check this box if the parties believe that there exist a sufficient number of e-discovery issues, or the factors at issue are sufficiently complex, that such issues may be most efficiently adjudicated before a Magistrate Judge.**

**Additional Instructions or Orders, if any:**

8

Dated: September 18, 2014

SO ORDERED:

**LAURA TAYLOR SWAIN**
**United States District Judge**